Clark's Ferry Bridge Company, Appellant, *v.* Pennsylvania Public Utility Commission.

Argued October 6, 1937.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*Geo. Ross Hull*, of *Snyder, Hull, Hull & Leiby*, for appellant.

*Samuel Graff Miller*, with him *Edward Knuff*, for appellee.

OPINION BY PARKER, J., December 17, 1937:

In this appeal from an order of the Public Service Commission directing the Clark's Ferry Bridge Company to file, post and publish a new tariff reducing its rates of toll, the appellant challenges the authority of the commission to make the order but does not question the reasonableness of the order. The challenge is based on the facts that the Commonwealth undertook to take over a bridge property by virtue of an exercise of the alleged power of eminent domain and that the Commonwealth has been temporarily restrained by a preliminary injunction from retaining possession of the bridge and collecting tolls.

The commission on February 24, 1936 on its own motion initiated a proceeding intended to compel the utility to file a new tariff of rates that would yield a gross annual revenue not in excess of the amount fixed by an order of February 2, 1932, as affirmed by this court and the United States Supreme Court. After hearing, the commission on March 8, 1937, taking into consideration increased operating expenses, increased the allowable gross revenue to $90,375 and directed the utility to file a new tariff which would yield that amount, a sum less than it has been actually receiving under a former tariff.

On January 21, 1936, the Secretary of Highways of this Commonwealth, assuming to act under authority of Article IX, Section 16 of the Constitution of Pennsylvania and under the provisions of the Act of April 27, 1927, P. L. 395, as amended 1933, Sp. Sess., January 2, 1934, P. L. 205 (36 PS 3131-3141), initiated proceedings in the Court of Common Pleas of Dauphin County on behalf of the Commonwealth to condemn and appropriate the property of the appellant. On the same day the Secretary of Highways took possession of the bridge property and asserted his right to collect tolls. On the following day, January 22, 1936, appellant filed a bill in equity and obtained a preliminary injunction restraining the Secretary of Highways from taking possession of the bridge and from collecting the tolls. On motion to continue the preliminary injunction the court of common pleas filed an exhaustive opinion and ordered the preliminary injunction continued until final hearing. So far as the record discloses nothing further has been done in that action.

It having been suggested by appellant that, in the event the bill in equity should be finally dismissed and the Commonwealth then takes possession of the bridge, the bridge company might be held liable for the collection of tolls as fixed by the order in force at the time

the Commonwealth attempted to take possession, there were then filed in this proceeding separate written declarations, each in substantially the same language, by the Secretary of Highways and the Attorney General, stating as follows: "Please be advised that in the event that the Clark's Ferry Bridge Company shall conform to an order of the Public Service Commission, requiring a reduction in rates, I, on behalf of the Commonwealth of Pennsylvania, agree that the Department of Highways [Commonwealth, in agreement of Attorney General] shall make no attempt to surcharge the Bridge Company by reason of such reduction, in case it should be determined that the Commonwealth had taken legal possession of the Clark's Ferry Bridge on January 31, 1936. I understand that this letter is to be made a part of the record before the Commission in the above proceeding to require a proper reduction in the tolls now charged by the Clark's Ferry Bridge Company."

We are all of the opinion that the order of the commission should be affirmed. The Secretary of Highways is authorized by the Act of 1927 as amended to acquire toll bridges wholly within the Commonwealth by agreement as to the price with the owners or by condemnation proceedings. The Attorney General is designated as the legal representative of the Commonwealth in such condemnation proceedings. With relation to the collection of tolls it is provided: "The Secretary of Highways, upon acquiring any such toll bridge, is hereby directed to continue the collection of tolls and charges on such bridge or bridges, or reconstructed bridges, until the Commonwealth has been reimbursed to the full extent of the original cost of acquiring any and all such bridges, with interest thereon at the rate not exceeding six per centum, and the cost of compensation of toll collectors."

The contention of the utility is that the commission

is at this time without authority to order a reduction in rates. We regard this position as inconsistent. The bridge company asserts in the bill in equity that it is the true owner and has the right of possession of the bridge property. The courts of Dauphin County have for the time being adopted that contention and remanded such possession to the utility. Under such circumstances the bridge company ought not to be heard to say that they are not so in possession as owner. The bridge company is now in fact in possession of the bridge and operating it as a public utility. It is therefore subject to regulation by the Public Utility Commission.

The brief of the company refers to the present situation as an anomalous one. We do not regard the situation we are now considering as materially different from that frequently created when a preliminary injunction is granted which is intended to preserve the status quo. The bridge company is permitted to operate the bridge as its own until final disposition of the case and in so operating it does so as any other defendant and must conform to the law. It just happens that the bridge company is a public service company which is subject to regulation by the commission. It is as a utility owner and in that capacity alone that the appellant is functioning and it is the utility and not the Commonwealth which is operating the bridge. If there is an anomaly present, it is found in appellant's contention which for practical purposes is that the condemnation proceeding and bill in equity have created a status whereby the present tolls may not be reduced even though they are admitted to be higher than the utility should continue to charge and even though the bridge company is entitled to have its bill finally sustained. Such contention would place it beyond the power of either the commission or the Secretary of Highways to reduce the tolls at this time.

The appellant suggests that it is being placed in a position where if the bill in equity is not sustained it may be held liable for the collection of the tolls in force at the time the condemnation proceedings were instituted. Even if this be true, it does not change the duties of the parties; the responsibilities of the bridge company were assumed when it asked for and obtained the preliminary injunction. We think, however, that counsel for the bridge company is unduly concerned on this score. They have the agreements of the Secretary of Highways and the Attorney General that no attempt will be made by the Commonwealth to surcharge the Clark's Ferry Bridge Company for any sums in excess of those fixed by the Public Service Commission, in the event that it is determined that the Commonwealth took legal possession of the bridge on January 21, 1936. While we recognize the facts that the Secretary of Highways is not authorized to delegate his discretion as to the amount of tolls to another, and that there are limits even upon the powers of an attorney chosen to conduct litigation, it would be a gross abuse of faith upon the part of the Commonwealth to seek to place the bridge company in any such position.

We seriously doubt, however, the force of the suggestion that the bridge company may be subject to surcharge on account of the change made by the Public Service Commission. It was not proposed to decrease the rate base and the order of the commission does not have that effect. The only change made by the order is to require a tariff to be filed which will yield the same rate of return on the same fair value that was in force when the Commonwealth attempted to condemn the bridge property. The order merely brings the tariff into harmony with the previous and existing order approved by the courts. Under such circumstances the Commonwealth would have much difficulty in persuading a court that it could recover for such reductions in

tolls collected. The amounts to be collected are based on fair value previously fixed, as we have pointed out, and the Attorney General and Secretary of Highways have not given away any rights of the Commonwealth.

If it should be held that the bridge company is still the owner of the bridge property and that the Secretary of Highways did not take legal possession of the bridge, not only is no harm done the bridge company, but it has only been required to comply with an order made by the Public Service Commission which is admitted to be reasonable.

The order of the Public Service Commission is affirmed.